DURHAM CARNEGIE v. JOE PERKINS.

(Filed 17 March, 1926.)

1. Landlord and Tenant—Title—Possession—Vendor and Purchaser—Contract of Rent—Statutes.

A tenant may not continue in possession of the leased premises and deny his landlord's title by setting up a superior or outstanding title in himself, nor where he continues in possession under a former owner and contracts with a purchaser to pay him rent, can he assert ownership of title in himself. C. S., 1473, 1476, 1477, 1478.

2. Evidence—Nonsuit—Landlord and Tenant—Possession—Title—Trials.

On a trial on appeal to the Superior Court in a summary action of ejectment, where the question involved is whether a tenant holding over the possession from a former owner had agreed to pay rent to the purchaser, and the evidence is conflicting, the question of jurisdiction is determined by the answer of the jury to the issue, and a motion as of nonsuit is properly denied. C. S., 567.

APPEAL by defendant from Stack, J., and a jury, at November Special Term, 1925, of PITT. No error.

The issues submitted to the jury and their answers thereto, were as follows:

"1. Did the defendant rent the room in the house in question of the plaintiff and agree to pay one dollar per week therefor, as claimed by the plaintiffs? Answer: Yes.

"2. Does the defendant wrongfully hold over, and has his term expired, as claimed by the plaintiffs? Answer: Yes."

The judgment of the court below was as follows:

"This cause coming on to be heard before his Honor, A. M. Stack, and a jury, upon an appeal from B. F. Tyson, justice of the peace, and being an action by the plaintiff against the defendant on a rental contract for the payment of rent at $1 per week, alleging that the contract was breached by the defendant on 1 May, 1924, and demanding that payment of rent be had and for the possession of the premises and the issues of record having been submitted to the jury wherein the jury say that there was a contract between the plaintiff and the defendant, wherein the defendant agreed to pay $1.00 per week rent for room in the house of the plaintiff and that the defendant wrongfully holds over and that his term has expired and that the plaintiff is entitled to the possession of the property as established by the issues of record and the answers thereto, by the jury. It is now, thereupon, on motion of S. J. Everett, attorney for the plaintiff, ordered, adjudged and decreed that the plaintiff recover of the defendant rent at $1.00 per week from 1 May, 1924, and interest thereon until paid and that by reason of the breach of contract of the defendant the plaintiff is entitled to the possession of the premises unlawfully held by the defendant, Joe Perkins, and it is adjudged that the plaintiff is entitled by reason thereof to the possession of the same and that the cost of this action be taxed against the defendant."

The defendant made numerous exceptions and assignments of error, the main ones will be considered in the opinion.

*S. J. Everett for plaintiff.*
*Julius Brown for defendant.*

CLARKSON, J. The only material assignments of error by defendant necessary to be considered, are as follows:

"(1) At the close of the plaintiff's evidence, the defendant moved the court to nonsuit the plaintiff and to dismiss the action.

"(2) At the conclusion of all of the evidence, the defendant renewed his motion to nonsuit the plaintiff and dismiss the action."

Was the court below correct in overruling defendant's motions for judgment as in case of nonsuit? C. S., 567. We think so.

Defendant contended that the following provision was in a deed and agreement made 16 December, 1915, by Puss Harrington to and with

Sam Short, both signing same: "And he further covenants that after the death of the said Puss Harrington her husband's nephew, Joe Perkins, shall have possession and use the one room in said house during his natural life without any charge whatever." That an action of ejectment was brought before a justice of the peace contrary to the provisions in the Constitution of North Carolina, Art. IV, sec. 27—that a justice of the peace has no jurisdiction where the "title to real estate" is in controversy. C. S., 1473.

"C. S., 1476. In every action brought in a court of a justice of the peace, where the title to real estate comes in controversy, the defendant may, either with or without other matter of defense, set forth, in his answer, any matter showing that such title will come in question. Such answer shall be in writing, signed by the defendant or his attorney, and delivered to the justice."

"C. S., 1477. If it appears on the trial that the title to real estate is in controversy, the justice shall dismiss the action and render judgment against the plaintiff for costs."

C. S., 1478, provides when action dismissed before a justice of the peace another may be brought in Superior Court.

Defendant contends that the action should be dismissed and the motions for judgment as in case of nonsuit should be allowed.

Plaintiff contends that the "title to real estate" is not in controversy. That on 17 October, 1923, he bought a fee-simple title to the land from Col. Harry Skinner and wife, with full covenants of warranty.

Durham Carnegie, testified, in part: "We moved there and found Joe Perkins there. I stayed there a time and got everything straight like I wanted it, and told Joe that he would have to pay me rent, that I had bought the place and showed him where the deed was. I showed him the deed for it. I had bought it and paid for it, from Col. Harry Skinner, and he asked me then how much rent. I told him I would charge him $1 per week for the room. 'Well,' he said, 'I will pay you $1 a week, but I will have to wait a while until I get kinder straight.' . . . When I asked Joe about paying rent he didn't say anything about his owning the property, not to me. He never did make any such statement."

Julia Carnegie, testified, in part: "I know Joe Perkins. I had a conversation with him, or contract with him, in reference to renting a room in my house. When we moved there, I took the deed and read it to him and told him I had a deed and I wanted rent for the room and he said, 'How much?' and I said, 'One dollar a week,' and he said 'All right.' Durham was present when that contract took place. He did not say anything about owning the land or having any interest in it. He did not pay me."

The defendant denied the agreement alleged by plaintiff to pay rent, and testified, in part: "I told them I had a life estate there. My Aunt Puss gave it to me. She raised me and she gave me a life estate. I went there and have been staying there ever since. I told them I had the room and they knew I had it. That was my room, they knew it was my room, they knew it was my room when they moved there, Aunt Puss gave me my room to be mine, and Julia moved Aunt Puss' things in my room, put them in my room. In the case of Grimes v. Sam Short, no papers or summons were served on me. I didn't know anything about the suit."

The court below charged the jury, in part, as follows: "It is not a question of who owns this house, or who owns that room. It does not make any difference as far as this case is concerned, who owns it, but the question is simply whether or not the defendant agreed to pay rent for it, agreed to rent it from the plaintiff. Now, there is this principle of law that when one rents from another that is an admission that he has got some kind of title. The law will not permit a man to dispute one from whom he rents over title. A tenant may sublet and become a landlord himself without any title to the property and yet he can throw out his sub-lessee if the term expires. If there was no renting in this case the plaintiff has no right to go in a court of a justice of the peace and bring this action. He would have to come in to the Superior Court here and allege that he was the owner of the land and the defendant wrongfully detained him and the defendant would deny that such was his claim of title and we would try the title of the room. In this particular case, the title to the land cannot come in, it is only a question of whether or not there was a rental. If the plaintiff didn't rent to the defendant that ends the matter. If he did, then if he didn't comply with his contract, he would have to get out."

The jury answered the issues in favor of plaintiff. The charge of the court is well settled law.

In *Lawrence v. Eller,* 169 N. C., p. 213, *Hoke, J.,* speaking to the subject, and citing numerous authorities, says: "It is recognized as the general rule that a tenant is not allowed to controvert the title of his landlord or set up rights adverse to such title without having first surrendered the possession acquired under and by virtue of the agreement between them." *Alexander v. Gibbon,* 118, N. C., p. 800; *Hobby v. Freeman,* 183 N. C., 241; *Shelton v. Clinard,* 187 N. C., 665.

In *Perry v. Perry,* 190 N. C., p. 126, *Varser, J.,* speaking to the question, says: "Of course, as stated in *Davis v. Davis,* 83 N. C., 71, if the defendant did enter as tenant of the plaintiffs or became such after entry, then he is estopped to deny the plaintiffs' title (16 R. C. L., 469), or to assert title to himself (16 R. C. L., 657), until he has re-

stored the possession to the plaintiff, but he may contest the issue of tenancy by any competent evidence."

There are modifications to this rule, as in the case of *Hargrove v. Cox,* 180 N. C., p. 360, and cases there cited; but, in the present case, the evidence of plaintiff tended to show a direct promise of rental by defendant to plaintiff. The jury found for the plaintiff. The deed to the property was made to Durham Carnegie and wife, Julia Carnegie. The action was properly brought by plaintiff. *Davis v. Bass,* 188 N. C., 200. In the present action, from the jury's finding, defendant is debarred of asserting any equitable right or title he may have in the property.

From the entire record we can find

No error.